## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIE RODGERS, | ) | |
| | ) | |
| Plaintiff – Counter Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 6113 |
| | ) | |
| LOUIS DEJOY, Postmaster General, | ) | Judge Rebecca R. Pallmeyer |
| United States Postal Service,[1] | ) | |
| | ) | |
| Defendant – Counter Claimant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Marie Rodgers was employed by the U.S. Postal Service ("USPS") beginning in 1996. She suffered an injury, sought accommodations for resulting disabilities, and was ultimately terminated from employment in 2010. Plaintiff has challenged the USPS's decisions in a variety of proceedings, culminating in this federal lawsuit. For the reasons explained below, the court concludes that the USPS did not violate Rodgers' rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*[2]

The procedural history is complicated. In November 2011, an administrative judge ("AJ") determined that the USPS had failed to reasonably accommodate Plaintiff's disabilities. The AJ ordered the USPS to reinstate Plaintiff's employment and award her back pay. The USPS, however, determined that Plaintiff's termination—which she did not challenge in the administrative

---

[1] When Plaintiff filed this lawsuit, Patrick R. Donahoe was Postmaster General. Megan J. Brennan was sworn in as Postmaster General in February 2015, followed by Louis DeJoy in June 2020. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, DeJoy is substituted as Defendant.

[2] Plaintiff has asserted her claims under the ADA, but federal employees such as Plaintiff can bring disability claims against their government employers only under the Rehabilitation Act, 29 U.S.C. § 794. *See, e.g.*, *Hancock v. Potter*, 531 F.3d 474, 478 n.4 (7th Cir. 2008). In determining whether a government employer has violated the Rehabilitation Act, courts use "the provisions and standards" set out in the ADA. *Sansone v. Brennan*, 917 F.3d 975, 979 n.1 (7th Cir. 2019).

proceedings—was an intervening event that limited the AJ's award. Thus, the USPS refused to reinstate Plaintiff's employment and paid back pay only through her termination date. In May 2014, the Equal Employment Opportunity Commission ("EEOC") rejected Plaintiff's claim that the USPS had violated the AJ's order.

 In the case now before this court, Plaintiff Rodgers asserts claims for failure to accommodate, constructive discharge, and wrongful termination. Early in the litigation as explained below, Defendant argued that the court has jurisdiction only to adjudicate an appeal of the EEOC's decision that the USPS complied with the AJ's order. Plaintiff then withdrew her failure-to-accommodate claim. Years later, Defendant changed gears: he argued that his previously-identified basis for jurisdiction was incorrect and urged the court to allow Plaintiff to reinstate her failure-to-accommodate claim. Once she did so, Defendant filed a counterclaim seeking return of the back pay award. Defendant now moves for summary judgment on Plaintiff's Fifth Amended Complaint. For reasons explained here, Defendant's motion is granted.

## **BACKGROUND**

### A.     **Plaintiff's Work History and Accommodation Requests**

Plaintiff began working for the USPS in 1996 as a distribution clerk at the Irving Park Road Processing and Distribution Center in Chicago, Illinois. (Pl.'s L.R. 56.1 Resp. [112-5] ¶ 3.) Her duty was to sort mail. (*Id.*) After four years, she "bid" on and received a position as a general clerk, a secretarial position referred to as part of the "clerk craft." (*Id.* ¶¶ 3–4.) Plaintiff remained in this position until 2006, when she was "excessed"—that is, her position and other clerical positions were eliminated due to increased automation. (*Id.* ¶ 4.) When the general clerk position was eliminated, Plaintiff accepted USPS's offer of a position of mail handler, within what is known as the "mail handler craft." (*See, e.g.*, *id.* ¶ 36.) In June 2007, Plaintiff suffered a back injury, which she contends she sustained at work while pushing wire cages of mail. (*Id.* ¶ 5.) The injury restricted Plaintiff's ability to lift, bend, stoop, and twist. (*Id.* ¶ 6.) Plaintiff missed time from work and filed a claim with the Office of Workers Compensation. (*Id.* ¶ 5.)

The USPS offers limited-duty or light-duty assignments to employees who have injuries that "temporarily or [sic] hinder their ability to perform the duties of their job . . . ." (*Id.* ¶ 8.) Limited-duty assignments are "made in accordance with the Federal Employee Compensation Act" for employees with verified on-the-job injuries. (*Id.*) Light-duty assignments, by contrast, are available for employees who sustain off-the-job injuries or non-job-related illnesses, verified with medical documentation. (*See* Temporary Light Duty Policy and Procedures, Ex. 7 to Def.'s L.R. 56.1 Stat. [89-4] at 00287.) Limited- and light-duty assignments are temporary. (Pl.'s L.R. 56.1 Resp. ¶ 9.) While Plaintiff's workers' compensation claim was pending, the USPS gave her limited-duty assignments—such as making labels at a machine—on days she felt capable of reporting to work. (*Id.* ¶ 10.) In March 2008, the Office of Workers Compensation denied Plaintiff's claim that she had sustained an on-the-job-injury. (*Id.* ¶ 11.) Upon learning of this decision in November 2008, Plaintiff's then-manager told Plaintiff that she was no longer entitled to limited duty and needed to return to her regular assignment as a mail handler. (*Id.*) Plaintiff responded that her medical restrictions prevented her from working in that role. (*Id.* ¶ 12.) The manager directed Plaintiff to request a light-duty assignment or a reasonable accommodation through the USPS's District Reasonable Accommodation Committee. (*Id.*)

Plaintiff did request a light-duty assignment in November 2008. (*Id.* ¶ 13.) She refused the first light-duty assignment that the USPS offered after what appears to have been a misunderstanding about how Plaintiff's doctor described her medical restrictions. (*See id.* ¶¶ 13, 16.) She then remained at home until January 2009 due to severe pain. (*Id.* ¶ 17.) In January 2009, she presented updated medical records that restricted her pushing and pulling ability to no more than 25 pounds. (*Id.*) One of Plaintiff's supervisors (Barbara Reynolds-Morgan) then gave her a light-duty assignment on the "dock". (*Id.*) This assignment involved pushing and pulling mail carts weighing not more than 25 pounds and using a hand-held scanner to read bar codes on wheeled mail containers. (*Id.* ¶¶ 17–18.) Plaintiff admits that she was willing to perform only part of the job: she expected other employees to push or pull the mail containers to her, at which

3

point she would scan them. (*Id.* ¶ 18.)

In an affidavit provided to the EEO in May 2009, Reynolds-Morgan stated that Plaintiff's practice of "just [standing] there with the scanner" was "unproductive; we don't have that kind of job." (Reynolds-Morgan EEO Aff., Ex. 10 to Def.'s L.R. 56.1 Stat. [89-7] at 00133.) Plaintiff denies that she was unproductive in the role (*see* L.R. 56.1 Resp. ¶ 19) but, because she provides no supporting evidence, Defendant's position is unrebutted. *See* N.D. Ill. L.R. 56.1(b)(3)(B)–(C) (the party opposing a motion for summary judgment must provide "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon", and "a statement . . . of any additional facts that require the denial of summary judgment . . . ."); *see also, e.g.*, *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (district courts are not required to "scour the record looking for factual disputes" (internal quotation marks omitted)); *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (district judges are entitled to demand "strict compliance with Local Rule 56.1").

In February 2009, Reynolds-Morgan offered Plaintiff a different light-duty assignment, one that involved removing mail from a cart and loading it onto a flat sorting machine (the "FSM 1000"). (Pl.'s LR 56.1 Resp. ¶¶ 20–21; *see* Temporary Light Duty Assignment, Ex. 15 to Def.'s L.R. 56.1 Stat. [89-12].) Plaintiff tried the assignment for one day, but it caused her severe back pain because it required twisting and turning. (Pl.'s L.R. 56.1 Resp. ¶ 21.) Plaintiff did not try the assignment again. (*See id.*)

Meanwhile, in January 2009, Plaintiff had written a letter to the USPS's human resources department requesting a reasonable accommodation. (*See id.* ¶ 22.) Plaintiff met with the District Reasonable Accommodation Committee ("DRAC") in February 2009 to discuss her qualifications and medical restrictions. (*Id.* ¶ 23.) When the DRAC asked Plaintiff what kind of job she could do, Plaintiff responded that she could work in the general clerk position from which she had been "excessed" years earlier. (*Id.*) In April 2009, the DRAC informed Plaintiff by letter that it was denying her reasonable accommodation request. (*Id.* ¶ 26.) The DRAC's letter explained that

"the medical documentation available to the committee at the time of the decision fails to show that you have a disability requiring accommodation." (Apr. 2009 DRAC Ltr., Ex. 22 to Def.'s L.R. 56.1 Stat. [89-19] at 00222.)[3]  The DRAC remanded the reasonable accommodation request to the "Plant Manager . . . for further consideration and other possible options," and encouraged Plaintiff "to explore employment options" such as bidding, reassignment, or transfer.  (Apr. 2009 DRAC Ltr. at 00222.)

After attempting the FSM 1000 assignment in February 2009, Plaintiff never returned to work for the USPS.  (Pl.'s L.R. 56.1 Resp. ¶ 27.)  According to Plaintiff, this was not by choice, but rather because the USPS failed to reasonably accommodate her disability.  (*See id.*)  In August 2010, the USPS notified Plaintiff that it was terminating her employment because she had been absent since February 2009 without providing acceptable medical documentation showing a continued inability to work.  (*Id.* ¶¶ 27, 29.)[4]  Plaintiff responds that she justified her absences with proper "medical documentation on a monthly basis."  (*Id.* ¶ 29.)  Again, however, because she cites no evidentiary support for that assertion, the court disregards it.  Plaintiff also mentions that she met with Rozeena Brady—a USPS employee whose position Plaintiff does not specify— to "discuss[ ] in detail her failed efforts to receive a reasonable accommodation from the DRAC." (*Id.*)  According to Plaintiff, Brady "had no recollection of receiving said documents or discussing Plaintiff's reasonable accommodation efforts."  (*Id.*)  In support, Plaintiff cites the entire transcript of Brady's deposition for this case.  (*See id.*)  This response, too, violates Local Rule 56.1.  *See, e.g.*, *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710–11 (7th Cir. 2015)

---

[3]     Plaintiff disputes this characterization of the medical evidence and contends that her doctor provided documentation showing that she has a disability requiring an accommodation. (*See* Pl.'s L.R. 56.1 Resp. ¶ 25.)  For reasons discussed below, the contents of Plaintiff's medical records are immaterial to Defendant's summary judgment motion.

[4]     In its letter notifying Plaintiff of her removal, the USPS stated that she had been absent from work since April 1, 2009, not February 2009.  (*See* Aug. 26, 2010 Notice of Removal, Ex. 23 to Def.'s L.R. 56.1 Stat. [89-20] at 1.)  The parties do not address this inconsistency, but it is immaterial.

(citations "to depositions without identifying . . . the specific page number(s) on which the asserted fact can be found" are "wholly inadequate" for purposes of Local Rule 56.1).   Even if Plaintiff had provided a proper citation, the fact that a USPS employee in an unspecified role did not recall Plaintiff's efforts would not constitute evidence that Plaintiff had in fact provided medical documentation supporting her absences.

### B.   Essential Functions of the Mail Handling Job

The function of a mail handler in the USPS is to "[l]oad[ ], unload[ ], and move[ ] bulk mail," and to perform "other duties incidental to the movement and processing of mail."  (Bargaining Unit Qualification Standard (Mail Handler), Ex. 2C to Def.'s L.R. 56.1 Stat. [88-5] at 00148; *see* Pl.'s L.R. 56.1 Resp. ¶ 33.)   Applicants for mail handler positions "must be physically able to perform efficiently the duties of the position, which require arduous exertion involving prolonged standing, walking, bending and reaching, and may involve the handling of heavy containers of mail and parcels weighing up to 70 pounds."  (Bargaining Unit Qualification Standard (Mail Handler) at 00148; *see* Pl.'s L.R. 56.1 Resp. ¶¶ 34, 35.)   In an affidavit provided to the EEO in April 2009, Plaintiff acknowledged she was unable to perform this work: her affidavit stated, "I can not do repetitive twisting or bending, long standing, pull, push and lift over 20 lbs.  In my current position as a mail handler, these circumstances are essential [sic] part of my job."  (Pl.'s EEO Aff., Ex. 5 to Def.'s L.R. 56.1 Stat. [89-2] at 00079; *see* Pl.'s L.R. 56.1 Resp. ¶ 50.)   Plaintiff notes that she was not represented by counsel when she submitted the affidavit (se*e* Pl.'s L.R. 56.1 Resp. ¶ 50); she does not deny that the statement was truthful.  (*See id.*)

The FSM 1000 assignment (the one Plaintiff attempted for a single day in February 2009) requires "two mail handlers alternating two positions on the machine:  one that load[s] bulk mail onto the machine, and another that work[s] at the other end repeatedly lifting tubs of mail weighing 15 to 20 pounds . . . ."  (Def.'s L.R. 56.1 Stat. [88] ¶ 44 (citing Decl. of Karin A. Nowatzke, Acting Senior Manager of Distribution Operations at the Cardiss Collins Processing and Distribution Center in Chicago, Illinois, Ex. 2 to Def.'s L.R. 56.1 Stat. ("Nowatzke Decl.") [88-2] ¶¶ 16, 23).)   In

6

addition, it requires mail handlers to repeatedly bend and twist and to stand continuously. (*See* Def.'s L.R. 56.1 Stat. ¶ 44 (citing Nowatzke Decl. ¶ 16).) Plaintiff's assignment to the FSM 1000 was limited to loading mail onto the machine and therefore "was just a small piece of a mail handler bid assignment." (Def.'s L.R. 56.1 Stat. ¶ 44 (quoting Nowatzke Decl. ¶ 23).) There is no permanent mail handler bid assignment within USPS that is limited to that task (*see* Nowatzke Decl. ¶ 23), which Plaintiff acknowledges she was incapable of performing in any event (*see* Pl.'s L.R. 56.1 Resp. ¶ 21).

Similarly, there is no permanent mail handler bid assignment limited to scanning bar codes on mail containers. (Def.'s L.R. 56.1 Stat. ¶ 45 (citing Nowatzke Decl. ¶ 17).) Plaintiff disputes this, but again falls short of the requirements of Local Rule 56.1, citing no evidence to support her position. (*See* Pl.'s L.R. 56.1 Resp. ¶ 45.) The USPS uses the term "Nixie" (the origin of this term is unexplained) to refer to a light-duty assignment sometimes offered to injured workers on a temporary basis. (Def.'s L.R. 56.1 Stat. ¶ 47 (citing Nowatzke Decl. ¶ 19).) The "Nixie" task involves "repairing damaged mail and/or placing damaged mail in a plastic bag for return to the sender." (*Id.*) The "Nixie" is not a permanent mail handler bid assignment and, according to the USPS, there is "not nearly enough ["Nixie"] work to keep even one employee busy for an eight-hour day." (Def.'s L.R. 56.1 Stat. ¶ 47 (citing Nowatzke Decl. ¶ 19).) Plaintiff denies that the "Nixie" assignment was rare; she asserts that at the facility where she worked "more than 1 Mail Handler [was] assigned there due to frequent machine failures"; again, however, she cites no evidence for this assertion. (Pl.'s L.R. 56.1 Resp. ¶ 47.)

Defendant explored the issue of accommodation in discovery. In response to an interrogatory asking her to identify the accommodations she had sought from the USPS, Plaintiff responded only that she has asked "to return to work." (*Id.* ¶ 49; *see* Pl.'s Interrogatory Responses, Ex. 4 to Def.'s L.R. 56.1 Stat. [89-1] ¶ 12.) When asked during her deposition for this lawsuit to identify accommodations the USPS could have provided, Plaintiff testified that it could have given her a position as a general clerk, working the "Nixie", or scanning mail containers.

(*See* Pl.'s L.R. 56.1 Stat. ¶ 49; Pl.'s Dep., Ex. 1 to Def.'s L.R. 56.1 Stat. [88-1] at 69:13–70:6).)

She added that a position as a forklift operator would have accommodated her medical conditions

but admitted that the USPS could not give it to her "because of seniority." (Pl.'s L.R. 56.1

Resp. ¶ 49; Pl.'s Dep. at 70:8–15.)

**C. Collective Bargaining Rules**

As referenced above, the USPS "excessed" Plaintiff from her general clerk position,

moving her to a mail handler position in 2006. (*See* Pl.'s L.R. 56.1 Resp. ¶ 4.) "Excessing events

affect the most junior employees in the craft first." (*Id.* ¶ 58; *see* Declaration of David B. Shilney,

Manager of Labor Relations for the Great Lakes Area of the USPS, Ex. 3 to Def.'s L.R. 56.1 Stat.

("Shilney Decl.") [88-6] ¶ 13.) Defendant explained that under relevant collective bargaining rules,

excessing employees from a craft creates vacancies within that craft, which can only be filled by

employees still in that craft who bid on them. (*See* Def.'s L.R. 56.1 Stat. ¶¶ 68, 73; Shilney

Decl. ¶¶ 23, 31.) If "there is a need for additional staffing" in the craft after the bidding process is

complete, excessed employees can invoke their so-called "retreat rights" under the collective

bargaining agreement and bid on any unfilled vacancies in that craft. (Def.'s L.R. 56.1 Stat. ¶ 66;

Shilney Decl. ¶ 21.) The collective bargaining agreement requires the USPS to contact

employees wishing to exercise their retreat rights in the order of greatest seniority. (*See id.*)

Employees "do not have any rights to any one particular vacancy in their former craft; rather, they

only have the right to return to the first vacancy when it arises in their former craft in accordance

with their seniority." (*Id.*)

Plaintiff admits that the collective bargaining agreement contains these rules but denies

that the rules were "exclusively or uniformly administered at" her USPS facility. (Pl.'s L.R. 56.1

Resp. ¶ 66.) Once again, she cites no evidence to support her position. (*See id.*) Plaintiff also

states, without supporting evidence, that "there are exceptions to" the rules regarding retreat

rights, "especially regarding the accommodation of otherwise qualified, disabled employees who

bid or make known their intent to bid on such openings." (*Id.* ¶ 73.) The court disregards Plaintiff's

assertions because they violate Local Rule 56.1.

By April 2007, "97 full-time regular clerks with greater clerk craft seniority than [Plaintiff] . . . had been involuntarily excessed into mail handler craft or custodian assignments." (*Id.* ¶ 63; *see* Shilney Decl. ¶ 18.) The excessing process created just two vacancies for general clerk positions during the time relevant to this lawsuit, and the USPS awarded them to employees in the clerk craft. (*See* Pl.'s L.R. 56.1 Resp. ¶ 72; Shilney Decl. ¶¶ 25–29.) Shilney explained that the collective bargaining agreement precluded the USPS from assigning Plaintiff to the vacant general clerk assignments because (1) Plaintiff was a member of the mail handler craft and therefore could not bid on the assignments; (2) the USPS followed the bidding process set forth in the collective bargaining agreement to fill the vacancies; and (3) assigning Plaintiff to one of the vacancies would have "violated the retreat rights of at least 97 other excessed clerks who were more senior to [Plaintiff] that had not retreated yet." (Def.'s L.R. 56.1 Stat. ¶¶ 75–76; Shilney Decl. ¶ 33.) Plaintiff admits that Shilney gave this testimony but denies that the collective bargaining agreement precluded her from bidding on general clerk positions. (*See* Pl.'s L.R. 56.1 Resp. ¶ 75.) She contends that Defendant could have "accommodated her disability under the DRAC process had it been conducted fairly or in a non-discriminatory manner." (*Id.*) In violation of Local Rule 56.1, Plaintiff does not support these assertions with evidence, so the court disregards them.

### D.    Administrative Proceedings

On February 18, 2009, Plaintiff filed a formal complaint with the USPS Equal Employment Opportunity ("EEO") office, claiming that the USPS discriminated against her based on her race and failed to accommodate her disability. (*Id.* ¶ 28.) After investigating the charges, the USPS notified Plaintiff of her right to request a hearing before an EEOC Administrative Judge ("AJ"). (*See* May 14, 2014 Decision of the EEOC, Office of Federal Operations, Ex. 26 to Def.'s L.R. 56.1 Stat. ("May 2014 EEOC Decision") [89-23] at 1.) Plaintiff timely requested a hearing. (*Id.*) In August 2010, before the AJ held the hearing, the USPS terminated Plaintiff's employment for

9

being absent without providing supporting medical documentation. (Pl.'s L.R. 56.1 Resp. ¶ 29.) Plaintiff did not file an EEO complaint regarding the termination or seek to amend her pending EEO complaint to address it. (*Id.* ¶ 30.) Instead, she filed a grievance under the collective bargaining agreement. (*Id.*) On August 20, 2011 an arbitrator issued a written decision concluding that there was just cause for Plaintiff's termination. (*See* Aug. 2011 Arbitrator Decision, Ex. 24 to Def.'s L.R. 56.1 Stat. [89-21] at 1.)

The AJ held an evidentiary hearing on Plaintiff's failure-to-accommodate claim on October 4 and 5, 2011. (*See* Nov. 14, 2011 AJ Order, Ex. 1 to Pl.'s L.R. 56.1 Resp. [112-7] at 1.)[5] On November 14, 2011, she entered a written order in Plaintiff's favor on that claim. (*Id.*) Among other things, the AJ determined that the collective bargaining agreement did not preclude the USPS from reassigning Plaintiff to a general clerk position. (*See id.* at 15.) She explained that the agreement does "not require that an *unqualified* employee with more seniority" than Plaintiff be given preference over Plaintiff, who was qualified. (*Id.* (emphasis added).) According to the AJ, the USPS nevertheless assigned one of the general clerk vacancies that arose during the relevant time to an unqualified employee with greater seniority than Plaintiff. (*See id.* at 15–16.) The AJ also determined that the USPS did not strictly follow the seniority rules of the collective bargaining agreement when filling the other general clerk vacancy that arose during the relevant time. (*See id.* at 16.)[6] As a remedy, the AJ concluded that the USPS "should return [Plaintiff] to work", reasonably accommodate her disability, and pay her "full back pay, allowances, and differentials she would have received had she been accommodated." (*Id.* at 18.)

The USPS issued its final action implementing the AJ's decision on December 29, 2011.

---

[5]     In March 2011, the AJ granted the USPS's motion for summary judgment on the race discrimination claim. (*Id.*) In August 2011, the AJ determined that Plaintiff had waived any claim for compensatory damages. (*Id.*)

[6]     The AJ's other findings are recounted in greater detail in this court's order denying in part and granting in part Defendant's motion to dismiss the Third Amended Complaint. *See Rodgers v. Brennan*, No. 14 C 6113, 2016 WL 1106858, at *2 (N.D. Ill. Mar. 22, 2016).

(*See* May 2014 EEOC Decision at 2.)  But it did not reinstate Plaintiff's employment and awarded her back pay only through September 27, 2010—the official date of her termination.  (*Id.*)  On May 3, 2012, Plaintiff notified the USPS that it was in violation of the AJ's order.  (*Id.*)  The USPS stood by its refusal to reinstate or pay Plaintiff, and on May 15, 2012, Plaintiff notified the EEOC that the USPS was not complying with the AJ's order.  (*Id.*; *see* 29 C.F.R. § 1614.401(e) ("A complainant . . . may appeal to the Commission an agency's alleged noncompliance with a . . . final decision in accordance with § 1614.504.").)

On May 14, 2014, the EEOC issued a written decision concluding that the USPS had not violated the AJ's order.  (*See generally* May 2014 EEOC Decision.)  The EEOC agreed with the USPS that Plaintiff's termination was based on her own actions—"fail[ing] to abide by standard leave procedures and to produce acceptable medical documentation supporting her extended absence"—and therefore was an "intervening event" that limited the remedies the AJ had ordered.  (*Id.* at 3.)  The EEOC also observed that Plaintiff had not challenged her termination in proceedings before the AJ.  (*Id.*)  The final language in the EEOC's decision notified Plaintiff of her right to file a motion for reconsideration or to appeal the decision to an appropriate federal court within 90 days from the date she received the final decision.  (*Id.* at 3–4.)  This civil lawsuit followed.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on August 8, 2014 and has amended her complaint five times.  In her first three complaints, she asserted a claim for failure to accommodate her disability despite having prevailed on that claim at the administrative level.  (*See* Compl. [1] ¶ 12(e); Am. Compl. [22], Count I; Second Am. Compl. [34], Count I.)  She also asserted claims challenging her termination.  (*See* Compl. ¶ 12(b); Am. Compl., Count I; Second Am. Compl., Counts II, III.)

Defendant moved to dismiss Plaintiff's Amended and Second Amended Complaints.  He argued that the court should dismiss Plaintiff's termination-related claims for failure to administratively exhaust them.  (Def.'s Mem. in Supp. of First Mot. to Dismiss [24] 2, 8.)  He also

maintained that the court should dismiss the lawsuit on the independent ground that Plaintiff did not file it within 90 days of the December 2011 final agency action.  (*See* Def.'s Reply in Supp. of First Mot. to Dismiss [35] at 1, 5–6 (citing 42 U.S.C. § 2000e-16(c) (complainant may file a civil action in the appropriate federal district court within 90 days of receiving notice of a final action taken by an agency on a complaint of discrimination)).)  In Defendant's view at that time, the "*only* thing [Plaintiff] could theoretically challenge" is the EEOC's May 2014 determination that the USPS complied with the AJ's order.  (Def.'s Mem. in Supp. of First Mot. to Dismiss at 6; *see* Second Am. Compl. ¶ 4 (alleging that Plaintiff filed her lawsuit within 90 days of receiving the EEOC's May 2014 decision).)  Defendant also noted that by pursuing a failure-to-accommodate claim in this lawsuit, Plaintiff "risks loss of the substantial relief that she has won"—the back pay award—"because she [cannot] limit her appeal of the agency's decision to just those parts with which she disagrees . . . ."  (*See* Def.'s Mem. in Supp. of First Mot. to Dismiss at 8.)

The court denied Defendant's motion to dismiss without prejudice but limited Plaintiff's lawsuit to an appeal from the EEOC's May 2014 decision.  (*See* June 18, 2015 Order [36] (granting Plaintiff leave to file an amended complaint).)  Plaintiff then filed a third amended complaint in which she asserted two counts of violation of the ADA.  In Count I, she alleged that she was constructively discharged when Defendant withdrew her reasonable accommodations and forced her to exhaust her annual and sick leave.  (Third Am. Compl. [37] ¶¶ 22–27.)  In Count II, she alleged that Defendant wrongfully terminated her employment because of her disability.  (*Id.* ¶¶ 29–37.)  Plaintiff sought, among other things, reinstatement and back pay up to the date of reinstatement.  (*Id.* ¶¶ 28, 37.)

Defendant again moved to dismiss, again arguing that the Third Amended Complaint must be limited to an appeal of the EEOC's May 2014 decision.  (*See* Def.'s Renewed Mot. to Dismiss [39] ¶ 1.)  The court granted the motion in part.  *See Rodgers*, 2016 WL 1106858, at *4 (determining that Plaintiff's failure to administratively exhaust her constructive discharge and wrongful termination claims required their dismissal without prejudice).  The court construed the

Third Amended Complaint as alleging a separate count for review of the EEOC's May 2014 decision and allowed that claim to proceed. *See id.* *5 (stating that Plaintiff plausibly alleged that the May 2014 decision "effectively nullifies" the AJ's "make whole" remedies because it "appears undisputed that the reason for Plaintiff's discharge was her absence from work, which itself allegedly resulted from Defendant's failure to accommodate her disabilities").

In the months following that ruling, Defendant had a change of heart concerning the viability of Plaintiff's claims. (*See* Def.'s Sept. 2016 Br. [66] at 1.) On September 30, 2016, Defendant moved "to allow Plaintiff to reinstate her reasonable accommodation claim and to allow additional time for discovery" [65]. Defendant concluded that under relevant regulations, this court would have jurisdiction to order an agency to comply with an AJ's ruling only if EEOC had concluded that the agency had failed to do so. Because the EEOC in this case had found that the agency was in fact in compliance, this court "lacks jurisdiction to *directly* review" that finding. (*Id.*)[7]

Although the court lacks jurisdiction to directly review the EEOC's May 2014 decision, Defendant asserted, the court does have jurisdiction to undertake *de novo* review of the underlying discrimination claim. (*See* Def.'s Sept. 2016 Br. at 5–6 (arguing that Plaintiff complied with 29 C.F.R. § 1614.407(c), which provides that she is authorized under the Rehabilitation Act "to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of

---

[7] It appears Defendant is interpreting 29 C.F.R. § 1614.503(g), which provides that "[w]here the Commission has determined that an agency is not complying with a prior decision," it "shall notify the complainant of the right to file a civil action for enforcement of the decision . . . and to seek judicial review of the agency's refusal to implement the ordered relief . . . or to commence de novo proceedings pursuant to the appropriate statutes." Id. (emphasis added). Several courts have held that "[b]ecause § 1614.503(g) plainly applies only if the EEOC has determined that an agency has refused to comply with a prior EEOC decision, the provision is inapplicable in cases"—like this one—where "the litigant is seeking judicial review of a determination by the EEOC that the agency has complied with its prior decision." *DesRoches v. Potter*, No. 05-CV-88-PB, 2006 WL 1644542, at *4 (D.N.H. June 12, 2006) (citing *Adcock v. Roche*, No. 5:04–CV–208(DF), 2006 WL 1285045, at *6 (M.D. Ga. May 5, 2006)); *see also Drennon-Gala v. Ashcroft*, No. 06-C-529-S, 2006 WL 6010901, at *2 (W.D. Wis. Nov. 29, 2006) (similar).

the Commission's final decision on an appeal").)  Defendant acknowledged that if the court allowed Plaintiff to reinstate her failure-to-accommodate claim, Plaintiff could properly reinstate her wrongful termination claim as well.  (*See* Def.'s Sept. 2016 Br. at 6; *but see id.* at 6–7 (renewing objection that Plaintiff failed administratively exhaust any termination-related claim).) Plaintiff did not oppose Defendant's motion and filed a Fourth Amended Complaint [73], followed by the operative Fifth Amended Complaint [83].

In her Fifth Amended Complaint, Plaintiff asserts claims for failure to accommodate (Count I), constructive discharge (Count II), and wrongful termination (Count III) in violation of the ADA. She again seeks (among other things) reinstatement to a position that is within her medical restrictions and back pay up to the date of reinstatement.  (*See* Fifth Am. Compl. ¶¶ 36, 44, 57.)[8] Defendant filed a counterclaim, alleging that "[b]y seeking *de novo* review of" the administrative action, Plaintiff "has forfeited her entitlement to the benefit of the award that she received in the administrative process."  (Def.'s Counterclaim [84] ¶ 5.)  Defendant seeks to (1) offset the award already paid against any adverse judgment or (2) recover all or part of the award if Plaintiff loses this case or wins damages in a lesser amount than the award.  (*See id.* ¶¶ 6–8.)[9]

Defendant now moves for summary judgment on Plaintiff's Fifth Amended Complaint.  He argues that Plaintiff's failure-to-accommodate claim fails as a matter of law because there is no evidence from which a reasonable trier of fact would find that Plaintiff is a qualified individual with a disability or that the USPS failed to accommodate her disability.  (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Br.") [87] at 11–15.)  Defendant maintains that Plaintiff's termination-related claims fail for the same reasons.  (*See id.* at 15; *see also* Def.'s Reply in Supp. of Mot. for

---

[8]     The Fifth Amended Complaint refers to a "May 14, 2012 EEOC decision" (*see, e.g., id.* ¶¶ 1, 29), but the court is unaware of any such decision and, based on the context, assumes that Plaintiff is referencing the May 14, 2014 EEOC decision.

[9]     Defendant filed a similar counterclaim with his answer to Plaintiff's Fourth Amended Complaint, on January 30, 2017.  (*See* Def.'s Counterclaim [74] ¶¶ 5–8.)

Summ. J. ("Def.'s Reply") [114] at 12 ("[T]he Postal Service is *not* moving for summary judgment for failure to exhaust . . . .").)  Defendant also states, "This motion does not address the Postal Service's counterclaim for return of the administrative award.  We would hope to negotiate an agreed resolution of that claim in the event that the Postal Service prevails on the instant motion." (Def.'s Br. at 8 n.1)[10]

## DISCUSSION

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine dispute exists, and summary judgment is precluded, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party "bears the burden of demonstrating the absence of genuine issues of material fact."  *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019).  "If that occurs, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks omitted).  When ruling on a motion for summary judgment, a court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255; *see also, e.g.*, *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019).

### A.     Failure to Accommodate

To prevail on her failure-to-accommodate claim, Plaintiff must show that (1) she was a qualified individual with a disability, (2) Defendant was aware of her disability, and (3) Defendant failed to reasonably accommodate her disability.  *See, e.g.*, *Yochim v. Carson*, 935 F.3d 586, 590 (7th Cir. 2019); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

---

[10]     Defendant filed the motion for summary judgment on April 4, 2018.  Plaintiff repeatedly requested extensions of time to file a response, and the court granted them because of extenuating circumstances.  Plaintiff filed her response more than a year later, on July 29, 2019.  Defendant filed a reply on August 23, 2019.

A "qualified individual" means someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position" that she "holds or desires." *Preddie*, 799 F.3d at 813 (quoting 42 U.S.C. § 12111(8)). Defendant argues that Plaintiff has not identified evidence that would permit a reasonable jury to find that she can perform the essential functions of a mail handler job, with or without an accommodation. In addition, Defendant maintains that there is no evidence that could support a reasonable conclusion that the USPS failed to accommodate Plaintiff's disabilities. The court agrees with both points.

First, Plaintiff admits that she cannot perform the essential duties of a USPS mail handler without an accommodation. She agrees that a mail handler's functional purpose is to load, unload, and move bulk mail. (*See* Pl.'s L.R. 56.1 Resp. ¶ 33.) In addition, she agrees that to qualify for the position, a person must be able to stand, walk, bend, and reach for long periods of time, and may need to handle heavy containers of mail weighing up to 70 pounds. (*See id.* ¶¶ 34–35.) And in an affidavit Plaintiff provided to the EEO in April 2009, she stated that she cannot "do repetitive twisting or bending, long standing, pull, push and lift over 20 lbs." (Pl.'s EEO Aff. at 00079; *see also id.* (stating that those tasks are "essential" parts of her job).)

Second, Plaintiff offers no evidence that would support a reasonable finding that she can perform the essential duties of a mail handler with or without an accommodation. Plaintiff maintains that she "was able to perform a modified light duty assignment," but she cites only the AJ's conclusion to that effect and, without any further explanation, identifies pages from the transcript of the administrative hearing. (*See* Mem. in Supp. of Pl.'s Resp. to Def.'s Summ. J. Mot. ("Pl.'s Opp.") [112-4] at 7.) The court is not responsible for making Plaintiff's case, *see Zoretic*, 832 F.3d at 641, and because its review of the record is *de novo*, Plaintiff cannot survive summary judgment merely by relying on the AJ's conclusions of law. *See, e.g.*, *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006) (a federal court is not "under any obligation to defer to the determination of an administrative agency in an action which falls under Title VII of the Civil Rights Act of 1964"), *overruled on unrelated grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th

Cir. 2013); *see also* Def.'s Reply at 5 (emphasizing that "the factual record before this court is different from the record presented at the administrative level"). In any event, Plaintiff's purported ability to perform modified light duty assignments does not, by itself, support a reasonable finding that she can perform the essential duties of a mail handler with an accommodation.

Plaintiff's admissions in the instant case about light-duty assignments illustrate this point. Specifically, Plaintiff concedes that the USPS does not offer permanent light-duty assignments (*see* Pl.'s L.R. 56.1 Resp. ¶ 9) and that her ability to perform such an assignment would not mean that she is capable of performing the full duties of a mail handler. (*See id.* ¶ 8 (admitting that light-duty assignments are for employees whose injuries temporarily prevent them from performing their job duties); *see also id.* ¶ 44 (admitting that her "light-duty assignment to the FSM 1000 did not involve fully performing the mail handler job and was just a small piece of a mail handler bid assignment").). Defendant, for his part, offers evidence that the light-duty assignments Plaintiff requested as accommodations—working the "Nixie" and scanning mail containers after other employees bring them to her—are not standalone, permanent mail handler positions. (*See* Def.'s L.R. 56.1 Stat. ¶¶ 45, 47.) Plaintiff argues otherwise in her Local Rule 56.1 Response (but not her opposition brief). As is her pattern, however, she has cited no supporting evidence, so the court adopts Defendant's factual assertions on this score.

The undisputed evidence before the court is that the only accommodations Plaintiff requested within the mail handler craft were permanent assignments to light-duty positions that involved completing only some of a mail handler's essential job duties. Defendant correctly notes that an employer has no duty under the Rehabilitation Act "to reassign an employee to a permanent light duty position." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010). Nor must an employer "create a new job or strip a current job of its principal duties to accommodate a disabled employee." *Id.* These tenets hold true, Defendant argues, even when an employer creates a light-duty assignment as a temporary accommodation. (*See* Def.'s Br. at 14–15 (citing *Winfrey v. City of Chicago*, 259 F.3d

610, 616 (7th Cir. 2001) ("City was not obliged" to "create a modified . . . position . . . consisting of duties that [the plaintiff] believed he could perform", and "the fact that the City" did so "will not count as evidence that the position it created" encompasses the essential duties of the "full" position); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 (7th Cir. 2001) ("[I]f an employer bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation." (internal quotation marks omitted))).) Plaintiff does not address these cases or provide any competing authority. For this reason and the others just explained, she has not shown that a genuine factual dispute exists concerning her ability to perform the essential duties of a mail handler with an accommodation. Nor could a jury reasonably find that Defendant's refusal to create a permanent light-duty assignment for Plaintiff amounted to a failure to accommodate her disability.

Plaintiff's contention that the USPS could have assigned her to other "vacant, funded positions" fares no better. (Pl.'s Opp. at 7.) Plaintiff does not elaborate on this argument, other than by citing, without explanation, pages of the administrative hearing transcript and exhibits purporting to list job openings at her USPS facility between 2006 to 2010. The closest she comes to identifying evidence in support of this claim is her citation to pages 9 and 10 of the AJ's order, where the AJ concluded that (1) Plaintiff proved that she could perform the essential duties of a general clerk, and (2) the USPS did not credibly argue that it lacked general clerk vacancies to which it could have reassigned Plaintiff. (*See* Nov. 14, 2011 AJ Order at 9–10.) Considering the cited portions of the AJ's order, the court assumes that in referencing "vacant, funded positions", Plaintiff is arguing that Defendant failed to accommodate her disability by refusing to reassign her to a general clerk position, and apparently contending that she could perform the essential duties of such a position. But this argument ignores Defendant's assertion that the USPS "did not have any general clerk (or other clerk) positions into which it could have placed [her] without violating the collective bargaining agreement." (Def.'s Br. at 7.) Although the AJ found against Defendant

on that point (*see* AJ Order at 9–10, 15–18), the record before this court is different. Here, Plaintiff does not dispute Defendant's evidence about the bidding and seniority rules in the collective bargaining agreement and how they precluded the USPS from returning Plaintiff to her general clerk position. Instead, Plaintiff asserts with no evidentiary support that there are "exceptions" to the rules and that the USPS did not administer them "uniformly." (Pl.'s L.R. 56.1 Resp. ¶¶ 66, 73.) As explained, because those assertions are unsupported, Plaintiff is deemed to have admitted that the collective bargaining agreement barred the USPS from reassigning her to a general clerk position during the relevant time. Plaintiff, moreover, offers no response to Defendant's cited case law, which provides that "courts have been unanimous in rejecting the claim that 'reasonable accommodation' under the Rehabilitation Act requires reassignment of a disabled employee in violation of a bona fide seniority system." *Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1047 (7th Cir. 1996). No reasonable jury, therefore, could find that Defendant failed to accommodate Plaintiff's disability by refusing to reassign her to a general clerk position.

To summarize, Plaintiff has not pointed to any evidence that would permit a reasonable jury to find in her favor on two essential elements of her failure-to-accommodate claim: that she was a qualified individual with a disability and that Defendant failed to accommodate her disability. The court, therefore, grants Defendant's motion for summary judgment on the claim. That said, Plaintiff received her back-pay award, as ordered by the AJ, in December 2011. (*See* May 2014 EEOC Decision at 2.) Defendant did not file a counterclaim seeking return of the award until January 2017, after informing the court that the analysis he had adopted since the filing of the lawsuit was flawed. (*See* Def.'s Counterclaim [74] ¶¶ 5–8; *see generally* Def.'s Sept. 2016 Br.) In the court's view, Defendant's delay in seeking this recovery is prejudicial. Defendant does not ask the court to adjudicate his counterclaim at this stage, but the court urges him to resolve it in a manner that accounts for these unusual circumstances for which he is largely responsible.

**B.    Wrongful Termination**

Plaintiff asserts claims for wrongful termination and constructive discharge. Defendant

argues that because the USPS in fact terminated Plaintiff's employment, her constructive discharge claim is "superfluous." (Def.'s Br. at 10.) Plaintiff does not respond to that argument, so the court grants Defendant's motion for summary judgment on the constructive discharge claim. To prevail on her wrongful termination claim, Plaintiff must show that she (1) is disabled, (2) is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) was discharged solely because of her disability. *Monroe v. Indiana Dep't of Transp.*, 871 F.3d 495, 503–05 (7th Cir. 2017).

Defendant argues that Plaintiff's wrongful termination claim fails because, as just discussed, no jury reasonably could find that she can perform the essential duties of any USPS job for which she is eligible, with or without an accommodation. (*See* Def.'s Br. at 15.) Invoking the *McDonnell Douglas* burden-shifting framework,[11] Plaintiff responds that she "was performing her job duties at a level that met Defendant's legitimate expectations." (Pl.'s Opp. at 3 (citing, without explanations or page numbers, the AJ's order and the administrative hearing transcript).) But Plaintiff does not explain how that could be true if she cannot perform the essential duties of a mail handler job with or without an accommodation. The court agrees with Defendant, therefore, that the record precludes any finding in Plaintiff's favor on this essential element of her claim. *See Monroe*, 871 F.3d at 503 (a plaintiff must show that she is qualified to perform the essential functions of her job). The court declines to address Plaintiff's other arguments. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The court also notes that Plaintiff's failure of proof on this element shows that she could not recover

---

[11] Under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff can establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she performed her job reasonably in accordance with her employer's legitimate expectations; (3) she was subjected to an adverse employment action despite her reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer. *See, e.g.*, *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).

damages on the wrongful termination claim. In other words, because Plaintiff has not submitted any evidence that would support a finding that she can perform the essential duties of any job for which she is eligible, there is no basis for a finding that Defendant could reinstate her employment and award her additional back pay.

Defendant's motion for summary judgment on the wrongful termination claim is granted.

## **CONCLUSION**

For the foregoing reasons, the court grants Defendant's motion for summary judgment [86].

ENTER:

Date: January 19, 2021

_____
REBECCA R. PALLMEYER
United States District Judge